**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL NO. 06-117** |
| v. | : | |
| | : | **CIVIL NO. 08-757** |
| LAMONTE WILLIAMS | : | |

Diamond, J.                                                                    April 23, 2008

**M E M O R A N D U M**

      Lamonte Williams moves *pro se* to vacate his counseled guilty plea and sentence.  See 28

U.S.C. § 2255.   He asks me to declare as invalid the provision in his plea agreement by which he

waived his right to appeal or collaterally attack his conviction.  I will deny the Motion.

**I.        BACKGROUND**

      From the time he was charged, Mr. Williams has repeatedly sought to manipulate the

justice system.  The instant Motion is of a piece with this years long effort.

      **A.        Williams's Repeated Refusal to Work with Counsel**

      On March 16, 2006, the grand jury charged Williams with two counts of bank robbery

and one count of armed bank robbery.  See 18 U.S.C. §§ 2113(a), (d).  (Doc. No. 11.)  The Public

Defender initially represented Williams, who, contending his lawyer was unresponsive and

ineffective, asked me to appoint new counsel to represent him – a request joined by the Public

Defender.  (Doc. No. 31.)  After conducting a hearing at which counsel stated that in light of

Williams's behavior, she could no longer represent him, I granted the joint request and, on

August 11, 2006, appointed Williams J. Brennan to represent Williams.  (8/11/06 Tr. at 5; Doc.

No. 35.)  On November 2, 2006, Williams submitted a letter in which he alleged Mr. Brennan's

ineffectiveness and asked me to appoint new counsel – a request joined by Mr. Brennan.  (Doc.

No. 48.)  After a hearing at which Mr. Brennan asked to be replaced, I again granted the request. (Doc. No. 51.)  On December 7, 2006, I appointed Mark Cedrone to represent Williams.  (Doc. No. 52.)

From the outset, Williams sought to file numerous *pro se* pleadings (Doc. Nos. 27, 28, 36, 38, 40, 42, 63 ), which I struck because he was represented by counsel and not entitled to hybrid representation (Doc. Nos. 29, 37, 39, 41, 45, 67).  On February 21, 2007, Williams purportedly prepared and filed a Motion to Dismiss the Indictment.  (Doc. No. 63.)  On the face of the Motion, however, Williams apparently indicated that Mr. Cedrone had signed and filed the Motion.  (Id.; 3/1/07 Tr. at 2-3.)  Mr. Cedrone stated that he had not prepared, signed, or filed the Motion, nor had he authorized anyone else to do so.  (3/1/07 Tr. at 2.)  The Government stated that it had not yet determined whether Williams had submitted a fraudulent document in violation of federal law.  (Id. at 3.)  Mr. Cedrone moved to withdraw, citing a potential conflict of interest if he were required to testify as a witness against his client.  (Doc. No. 84.)  I granted Mr. Cedrone's Motion.  (Doc. No. 66.)

On March 1, 2007, I appointed Robert J. O'Shea, Jr., who vigorously represented Williams, filing motions to quash the superseding indictment, exclude testimony, and compel the Government to produce evidence.  (Doc. Nos. 66, 91, 95, 96.)

### B.    Williams's Contrived Speedy Trial Act Claim

Under the Speedy Trial Act, Williams's trial was required to begin by May 26, 2006.  On May 1, 2006, the Public Defender moved for a continuance, citing both the need to prepare for trial and Williams's agreement with the request.  (Doc. No. 17.)  I granted the Motion.  (Doc. No. 20.)  On November 26, 2006, Williams submitted a letter asking me to dismiss the indictment,

2

contending that he had not consented to the continuance.  (Doc. No. 49.)  On November 29, 2006, I conducted a hearing at which Williams and his former counsel testified.  (Doc. No. 50.)  I credited counsel's testimony – corroborated by her file notes – that Williams had consented to the continuance.  (11/29/06 Tr. at 9-10, 13.)  I discredited Williams's contradictory testimony and denied his letter request that I dismiss.  (Id. at 13.)

### C.    Williams Pleads Guilty

On April 27, 2007, after an extensive colloquy, Williams pled guilty to all charges pursuant to a written agreement with the Government.  The agreement included a provision – required by the Government in all plea agreements in this District – by which Williams waived (subject to certain exceptions)

> all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

(Doc. No. 114.)

This same waiver was also set forth in the Acknowledgment of Rights form that Williams reviewed and signed at the time he reviewed and signed the plea agreement.  (Doc. No. 114.) During the change of plea colloquy, both the Government and I reviewed the waiver provision with Williams:

> The Court:          Do you understand, as set out in your plea agreement, and as summarized by [the Assistant United States Attorney] earlier, that you are expressly and voluntarily waiving, meaning giving up forever, all your rights to appeal or collaterally attack your conviction, sentence, or any other matter relating to this prosecution, and that this waiver includes a wavier of your right to appeal or to collateral attack under any provision of law?

| Williams: | Yes, I understand that. |
|---|---|
| The Court: | Do you understand that the only appeal you might have from your guilty plea, if I accept it, would be if I imposed a sentence that exceeds the statutory maximum for any count of conviction or if I unreasonably departed upward from the otherwise applicable sentencing guideline range, or if there were any errors in this guilty plea proceeding, or the sentencing proceeding, or if the Government appeals from the sentence I impose? |
| Williams: | Yes. |

(4/27/07 Tr. at 21-22.)

### D.     Williams Seeks to Invalidate His Appellate Waiver

The Government charged Williams with having committed three bank robberies in Center City Philadelphia.  On September 13, 2005 and again on October 7, 2007, Williams allegedly entered the HSBC Bank at 1515 Market Street wearing a baseball cap and sunglasses, and presented a teller with a note stating that Williams was armed and directing the teller to empty the cash drawer.  (4/27/07 Tr. at 11-13.)  The Government also charged that on October 28, 2005, Williams entered the Citizens Bank at 1234 Market Street wearing similar attire and presented the teller with a similar demand note.  (Id. at 13–14.)  When Williams realized that the teller had activated an alarm, he pulled out a small black gun and told the bank employees that he would "shoot the place up" if he saw any police.  (Id. at 14.)

The Government had compelling evidence of Williams's guilt, including photographs of Williams committing the robberies, Williams's fingerprint on one of the demand notes, and eyewitness testimony that Williams was the robber.  (Id. at 15-16.)

On the day trial was to begin, Williams and the Government entered into a guilty plea agreement that included the following stipulation: that Williams's adjusted guidelines offense

4

level was 23, with a resulting guidelines range of 51 to 63 months.  (Doc. No. 114 at 3-4.)  The

plea agreement explicitly provided that the Parties' stipulations did not bind the Court or the

Probation Department.  (Id. at 3.)

      In preparing the Presentence Investigation Report, the Probation Department determined

that the stipulated guidelines calculation was erroneous and that the offense level was 26, with a

resulting guideline range of 70 to 87 months.  In light of its stipulation, the Government

recommended a sentence within the 51 to 63 month stipulated range.  I rejected the

Government's recommendation and sentenced Williams to 70 months imprisonment – the

bottom of the guideline range.  (Doc. No. 128.)

      It is, apparently, this seven month difference – between the top of the stipulated range (63

months) and the bottom of the correct guideline range (70 months) — that has compelled

Williams to file the instant Motion to Vacate Sentence.  (Doc. No. 136.)  Williams is unable to

raise a § 2255 claim, however, because in his plea agreement he waived his right to appeal or

collaterally attack a lawfully imposed guideline sentence.  Williams asks me to invalidate the

waiver, raising largely conclusory and demonstrably baseless claims respecting his understanding

of the plea and Mr. O'Shea's competence.  The Government asks me to enforce the waiver and

dismiss Williams's Motion.  As I explain below, the record and the law confirm that Williams's

Motion is simply another manipulative effort.

## II.   LEGAL STANDARDS

      The Third Circuit has held that a defendant's wavier of appellate rights entered into

knowingly and voluntarily is valid and enforceable.  United States v. Khattack, 273 F.3d 557 (3d.

Cir. 2001).  The Khattak Court recognized, however, that "[t]here may be unusual circumstances

where an error amounting to a miscarriage of justice may invalidate the waiver." Id. at 562.  The

Court refused to delineate specific situations where a waiver would be invalid, and instead

endorsed a case specific approach that looks at several factors, including

> the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a
> sentencing guideline, or a statutory maximum), the impact of the error on the defendant,
> the impact of correcting the error on the government, and the extent to which defendant
> acquiesced in the result.

Id. at 563.  An identical standard applies to collateral attack waivers.  See United States v.

Shedrick, 493 U.S. 292, 298 n.6 (3d Cir. 2007).

Ineffective assistance of counsel throughout a plea proceeding may result in a miscarriage

of justice sufficient to invalidate an appellate waiver.  See Shedrick, 493 U.S. at 298 ("Enforcing

a collateral attack waiver where constitutionally deficient lawyering prevented [Defendant] from

understanding his plea agreement or from filing a direct appeal as permitted by his plea

agreement would result in a miscarriage of justice.")  A waiver does not "become [  ]

unenforceable simply because a defendant 'claims' ... ineffective assistance,' but only 'if the

record of the criminal proceeding revealed that the claim that the waiver was the result of

ineffective assistance of counsel was meritorious.'"  U.S. v. Akbar, 181 Fed. Appx. 283, 287 (3d

Cir. 2006) (quoting United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)); see also

Shedrick, 493 U.S. 298 (affirming district court's enforcement of appellate waiver with regard to

non-meritorious claim, but reversing for meritorious claim).

Thus, a defendant may not nullify an appellate waiver simply by alleging ineffective

assistance of counsel.  See United States v. Robinson, 244 Fed. Appx. 501, *2 (3d Cir. 2007)

(invalidating the appellate waiver where ineffective assistance of counsel claim was unsupported

by the record would "mak[e] a mockery of the waiver [Defendant] signed").

An evidentiary hearing is not invariably required whenever a defendant alleges that his lawyer was ineffective.  See id; Monzon, 359 F.3d at 118-19; see also Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) (a court may dismiss a § 2255 petition without an evidentiary hearing as long as court accepts the movant's factual allegations that are not clearly frivolous on the basis of the exiting record); Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991) (a hearing is not required when a § 2255 petitioner provides nothing more than "bald assertions and conclusory allegations").  Nor is an evidentiary hearing required whenever a defendant who pled guilty challenges the validity of his plea.  See United States v. Mativa, 112 Fed. Appx. 226, 228 (3d Cir. 2002) (no hearing required for motion to withdraw guilty plea where Defendant's allegations are merely conclusory); United States v. Miller, 20 Fed. Appx. 800, 802 (10th Cir. 2001) (no hearing required where defendant challenged validity of plea that included appellate waiver).

## III.   DISCUSSION

Williams argues that his appellate/collateral attack waiver was invalid because (1) his guilty plea was not knowing; (2) Mr. O'Shea was ineffective; (3) the Court breached the plea agreement; (4) the Court lacked subject matter jurisdiction; and (5) racial animus pervaded the proceedings.

### A.   Knowing Plea

In accepting William's guilty plea, I found that it was knowing, voluntary, and intelligent:

I find that the defendant is competent to plead, that his plea of guilty is voluntary, and not the result of force, or threats, or promises, apart from the plea agreement disclosed on the record, that there is a factual basis for the plea of guilty, that the defendant understands

> the charges against him, his legal rights, and the maximum possible penalty, and that the defendant understands that he is waiving his right to a trial.  The defendant is obviously very bright and has been consulting with his counsel throughout this proceeding, and plainly understands what he is doing.

(4/27/07 Tr. at 35).  Williams now contends that his plea was unknowing because he "was not afforded the proper time to read and receive a full understanding of the plea agreement and the waivers contained within the agreement."  (Doc. No. 136 at 1.)  The record shows the opposite is true.

Lamonte Williams is accomplished and intelligent.  Since graduating from high school, he has worked in a number of law firms and in an accounting firm, has done architectural drafting, and has sold insurance.  (4/27/07 Tr. at 4.)  Moreover, this was not Williams's first encounter with the justice system.  (PSIR at 11.)  In 2002, Williams pled guilty to a domestic violence charge.  (Id.)  Williams's numerous *pro se* pleadings – addressing issues as varied as the suppression of evidence, the Speedy Trial Act, and release on bail – confirm both his intelligence and his legal sophistication.  (Doc. Nos. 27, 28, 36, 38.)

During the plea colloquy, Williams credibly stated under oath that he was satisfied with Mr. O'Shea's representation, that he had ample time to discuss his case with Mr. O'Shea, and that he had reviewed both the plea agreement and acknowledgment of rights form with Mr. O'Shea before signing them.  (4/27/07 Tr. at 5-6, 10.)  During the colloquy, I explained to Williams as follows:

> [I]f you want to speak with Mr. O'Shea at any time, you'll let me know and we'll take a recess for as long as you need, so you can speak to your lawyer, all right?

(Id. at 3.)  Although Williams consulted with his attorney throughout the colloquy, he never indicated that he needed additional time to evaluate the plea.  Moreover, Williams stated that he

understood he was waiving his rights to appeal or collaterally attack his sentence.  (Id. at 22.)

Plainly, Williams has offered little more than a conclusion that his plea was unknowing – a

conclusion refuted by his own sworn statements and actions during his plea colloquy.  In these

circumstances, Williams has not shown an entitlement to an evidentiary hearing or other relief.

See Khattack, 273 F.3d at 563 (enforcing appellate waiver where the district court conducted

thorough colloquy); Zettlemoyer , 923 F.2d at 301 (court is not required to hold an evidentiary

hearing where petitioner merely asserts conclusory allegations).

> **B.      Ineffective Assistance of Counsel**

Williams alleges that Mr. O'Shea was ineffective because he advised Williams to enter

into the plea agreement, failed to prepare for trial, failed move for reconsideration of the sentence

I imposed, and did not obtain fingerprint experts before trial.

To make out ineffective assistance of counsel, Williams must show that his counsel's

performance "fell outside the wide range of professionally competent assistance," and that he

was prejudiced as a result.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Williams offers

no reason why Mr. O'Shea's advice to enter into a plea agreement was ineffective.  Williams

does not assert his innocence.  Nor does Williams explain why Mr. O'Shea's failure to seek

reconsideration of a lawful sentence was ineffective, or how Mr. O'Shea's failure to obtain a

fingerprint expert prejudiced Williams.  Finally, Mr. O'Shea presented three pre-trial motions

and actively participated in the final pre-trial conference (successfully contesting the

Government's efforts to obtain handwriting exemplars from Williams), thus demonstrating a

knowledge of the Government's case and likely lines of defense.  These efforts confirm that Mr.

O'Shea – a well-respected and highly experienced criminal defense lawyer – had certainly

prepared for trial.

In these circumstances, Williams has not adequately alleged ineffective assistance of counsel.  See Shedrick, 493 F.3d 292 (enforcing appellate waiver where allegations of ineffectiveness were inconsistent with the defendant's statements during the plea colloquy); Monzon, 359 F.3d at 118-19 (where the record shows that ineffectiveness claim lacks merit, appellate waiver should be enforced); United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) (defendant cannot evade appellate waiver by using the "guise of a claim of effective assistance of counsel"). Accordingly, he has not made out a miscarriage of justice sufficient to invalidate his appellate waiver.  See Khattack, 273 F.3d at 562-63 (appellate waivers should be enforced absent "unusual circumstances where an error amounting to a miscarriage of justice would invalidate the waiver").

### C.      Court's Breach of the Plea Agreement

Williams contends that because I accepted his guilty plea, I was bound by the Parties' guideline stipulation and obligated to follow the Government's sentencing recommendation of 51 to 63 months.

The record shows that when Williams pled guilty, he knew that I could reject the Parties' sentencing stipulation.  The plea agreement – which Williams read and reviewed with Mr. O'Shea – explicitly stated that the Parties' stipulations were not binding on the Court.  (See Doc. No. 114 ("these stipulations are not binding upon either the Probation Department or the Court").)  Moreover, Williams stated during the colloquy that he understood I was not bound to impose any particular sentence:

The Court:              Do you understand, that I will not be able to determine the sentence

|             | I will impose in your case, until after the presentence report is completed, and you and the Government have had ample opportunity to challenge the facts reported by the Probation Office, and I've had a chance to review all the relevant factors including the sentencing guidelines? |
|-------------|---|
| Williams:   | Yes. |

*       *       *

|             | |
|-------------|---|
| The Court:  | So you understand that I could, I appropriate circumstances, impose a sentence that is less severe or more severe than the sentence which the guidelines recommend? |
| Williams:   | I understand that. |

*       *       *

|             | |
|-------------|---|
| The Court:  | Do you understand that you will not be entitled to withdraw your guilty plea, if I impose a more severe sentence than you expect or that anyone else recommends? |
| Williams:   | Yes. |

(4/27/07 Tr. at 25-29.)

In these circumstances, Williams's argument that I breached the plea agreement is baseless.  See United States v. Schweitzer, 454 F.3d 197 (3d Cir. 2006) (appellate waiver enforced where plea colloquy showed the defendant understood stipulations did not bind the court); Shedrick, 493 F.3d at 300 (enforcing appellate waiver where plea colloquy showed that the defendant knew he could be sentenced up to the statutory maximum); United States v. Montano, 472 F.3d 1202, 1205 (10th Cir. 2007) (appellate waiver enforced where defendant received a more severe sentence than expected).

### D.   Subject Matter Jurisdiction

Williams next argues that his appellate waiver is invalid because the Court lacked subject matter jurisdiction over his prosecution.  This is absurd.  Williams pled guilty to robbing

11

federally insured banks located in this District.  Subject matter jurisdiction was proper because Williams was charged with three federal crimes.  <u>See</u> 18 U.S.C. §§ 2113(a); 2113(d).

### E. Racial Animus

Finally, Williams asserts that he suffered "adverse treatment" because of the "racially motivated abuse of powers by the court, government, and counsel."  (Doc. No. 136 at 2.) Williams does not explain how the Court, the Government, or any of his four lawyers discriminated against him.  Again, Williams has not made out a miscarriage of justice sufficient to overcome his appellate waiver.

## IV. CONCLUSION

Williams's appellate and collateral attack waiver was knowing and voluntary.  Because he has failed to show that a miscarriage of justice occurred, this waiver is enforceable and compels me to deny his petition.

An appropriate Order follows.

BY THE COURT.

*/s Paul S. Diamond*

_____

Paul S. Diamond, Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 06-117** |
| **v.** | : | |
| | : | **CIVIL NO. 08-757** |
| **LAMONTE WILLIAMS** | : | |

## **ORDER**

AND NOW, this 23rd day of April, 2008, upon consideration of Defendant's Motion to Vacate Sentence (Doc. No. 136) and the Government's Response and Motion to Dismiss Defendant's Petition (Doc. No. 141), it is ORDERED that the Defendant's Motion to Vacate Sentence is DENIED and the Government's Motion to Dismiss the Petition is GRANTED. The Clerk shall close this case for statistical purposes.

IT IS SO ORDERED.

*/s Paul S. Diamond*

_____

Paul S. Diamond, Judge